Consolidated with 09-16-22, Paul Colella v. Chicago Title Insurance. Counsel, would you approach and tell us who you are and who you represent, please? Joseph Power, Jr. for the plaintiff in this case. Good morning. Good morning. Gentlemen, come up and tell us who you are and who you represent, please. Mark Levine for the defendant's appellees. Good morning. And Mike Blake, Your Honor, for the defendant's appellees. Good morning. Welcome. You probably all know that each side has 15 minutes to speak to their side of the appeal. Have you figured out how you're going to – one person going to argue or are you both going to argue? We were going to split it up a little bit, Your Honor, and I'll go first, and then Mr. Tillery would take the rest of it. Assuming that you'd like some time for rebuttal? Yes. Great. Whatever you want to do, however you want to divide this by. We don't use the buttons. This is the international symbol for starting, winding it up, and you can begin when you're ready. Thank you. If we could reserve five for rebuttal. Yes, sure. Your Honor, is there 15 in five or is it 15 total? It's usually 15 total, but we only have two cases today, so take what you need. Okay. Thank you. May it please the Court, Justice Neville, Justice Gallagher, Presiding Justice O'Brien, this is appeal for the denial of a class certification. As the Court is aware, RESPA was created by the federal government in 1974. It was adopted, the regulations as well as all its guidelines, by the State of Illinois in 1990. The purpose was, as we well know, a house is a major investment. For most people, it's the largest investment in their life. And so RESPA was created so the homeowners would have a cut in expenses as well as fees and also provide for full disclosure of expenses and fees. That was important to consumers coming into a major purchase like this. So you want to make sure that coming into it, the homeowner knows exactly what they're going to pay and who they're going to pay it to. And the third thing was to ensure that there are no kickbacks, there are no referral fees, there's no payment for no nominal or duplicative work. And that's why RESPA was created, because there's a problem because with the I'm sorry, could you keep your voice up a little? At least don't amplify it. I have a cold. I know, I'm sorry. I understand. My law clerk is calling like this. Okay, I understand. And in these cases, you had attorneys who were hired by the purchasers as well as the sellers, and they were paid for their services, whatever it was, ordering surveys, doing many various things. But one thing that the homeowner was unaware of was these hidden fees, these kickbacks that were made by the title companies to the lawyer agents that they had. And in these cases back in 1996, HUD had investigated Florida. And remember now, 1990, Illinois had adopted RESPA and all its guidelines, and HUD looked into Florida and what the agents were doing, the attorney agents and the title companies were doing, and they had a program in Florida where they were doing the same thing. They were getting these undisclosed kickbacks, basically 70, 80 percent of the money going to title companies. 80 percent of premium, I think it was. Sure. Well, it varied here in Illinois. Can I cut to the chase a little bit with you? Sure. What I understood Judge Flynn to have done is to say that because of the difficulty of proving these cases, each one, that you'd have to say, well, this lawyer, Mr. Orlowski, for example, or some other lawyer, some people looked at the paperwork, didn't make any changes, but used their expertise in determining whether it was properly done. Some people made changes, and I guess they would have been able to say that they actually performed the work and that they complied with RESPA. And then there were people who didn't do anything. Isn't he saying there isn't a common nucleus of operative fact that I can litigate on or that you can litigate on? Well, Your Honor, Judge Flynn had to ignore what they decided in the HUD when HUD investigated this in Florida. HUD investigated this and they said, you know, you can't send a piece of paper that's dealing with the insurability. It's illegal. It's improper to be doing what they're doing. Basically, it's a pro forma commitment. They were doing the same thing in Florida in 1996. And then in 2000, it was in 2005 when the Illinois Department of Professional Regulation went and looked and they said they're doing the same thing. They issued a cease and desist letter. So is it a violation of RESPA, then, that you just are sending these documents? Absolutely. Absolutely. So it's not a matter of whether they're looking at it and actually performing work. I mean, as I read the RESPA statutes, you can't do it other than for services that are actually performed. It's not like you could send documents and have them actually perform legal work and be paid for it. Oh, if they did, that's a different – that gets into the second standard, which they have to be paid a different amount of money for their services performed. And then they'd get a bill and the client would know about it. Okay. The client would know about that bill, and that goes to the second prong. You can't do the subterranean things. That's correct. That goes to the second prong where you'd be paid for your services. Here, this was a program where they were being paid a set amount, 70% to 80%. The client didn't know about it. So if you went to the second prong for necessary work, that would be a separate bill. That would be like per hour, I'm paying you, you know, $300 extra for performing XYZ. That gets to the second aspect of it. The first aspect is the program that they were performing. It was a program that was prearranged where they would be paid a set amount, 70% to 80%, no matter what you did, whether you did something or whether you did nothing. And if you look – because if you look at the 1996 ruling, for example, by HUD in the guidelines in 1996, after they looked at the Florida system, which is exactly what we're doing here in Illinois, it says, for example, if the title insurance company provides its insurance agent with a pro forma commitment, typing or other document preparation services, the title agent is not, quote, actually performing, unquote, these services and is not entitled to a fee. All right? So if they're providing documents regarding the insurability of title, they're not performing a fee. So you can't get that pro forma preset program of 70% to 80%, whatever it is, to kick back. Then you go to the second prong. Are they actually doing work? Then you bill per hour. We're talking about, in this case, they were sending documents that's basically saying that this is insurable, and if there are certain exceptions, they'd outline for them. They lay it out for the lawyer. But that's improper. And in 1996, HUD said that's improper. That's in their guidelines. We've adopted this. We've adopted it. But it's important to the law that they just said, you know, to the purchaser, by the way, this is what is going to the attorney. If there's disclosure, or are you saying that the actual practice is suddenly improper? The practice, well, according to HUD, the practice is improper. Now, if they went to the second prong, where they're actually then going to disclose it to the purchaser or the seller, and they're going to say, you know. Part of your premium is going to this attorney, whether you know it or not. Here it is, and it's for these particular services. All right? Then that should be laid out. Not because of the referral. That's right. And then, in fact, you get to the second prong. Then you're paying them for what they actually did. If they did something in addition to, you know, the things a lawyer would naturally do, in which they're getting paid. Remember that the sellers and purchasers are paying these lawyers for these services. So they're getting paid. This is a percentage kickback that's coming through for basically illegal conduct, according to HUD, in 1996, which later in Illinois in 2005, the Illinois Department of Professional Regulation comes along and says, you've got to cease and desist this behavior. It's the same behavior that was going on in Florida in 1996. You've got to cease and desist. You can't do it anymore. And our class ends at the point in time that the Illinois Department of Professional Regulation comes in and issues that basically a cease and desist order. So you want us to write that the trial judge got it wrong because the trial judge did an analysis of what the attorneys did or did not do. You're saying went too far, should have said, nope, here's this system is wrong. And anybody who was in that system is part of that class, and we don't need to go to the analysis of what the attorneys did because the system's wrong. That's what you want us to write. That's correct. Or individually litigate them. That's what he said. Absolutely. That's what you want us to say, right? Absolutely. And that's true. And the trial judge ignored that. The trial judge ignored the HUD ruling. The trial judge ignored the system analysis and went right to the individual attorney analysis. That's correct. Absolutely. And it's the whole program. It's the system that was wrong here. And, you know, you've got our class sandwiched in two rulings saying this is illegal. Now it's an abuse of discretion standard. Would you agree with that? I agree. I agree. You want us to say the trial judge abused his discretion by using the wrong standard. In fact, you probably wouldn't even want us to talk about discretion and say, look, just got the analysis wrong. The analysis should be a system-wide analysis. You've got to look to RESPA. You've got to look to HUD. That's not where the trial judge looked. The trial judge looked to the individual players in terms of the method of proof as opposed to what the system was. Absolutely, Your Honor. I just want to get it out so I know I can say it. If you look at the case, you filed a motion to certify two cases as a class, two classes, or two cases as a class. Your motion to certify the class was denied. That's right. Okay. So the question, as I understand it, that's presented to the court is whether or not your complaints meet the requirements of Rule 23. That's the only thing we have to decide. And if you do, then he's abused his discretion because my understanding is you're saying he got into the merits of the case. We don't need to determine whether or not you can prove your case. All we need to decide is whether or not your complaint pleads a class that comes within the requirements of Rule 23. That's all we need to decide. That's right. If we agree with the judge, then you didn't. If we disagree with the judge, you did, and we should reverse it. Is that what you're asking us to do? Absolutely, Your Honor. And most importantly is he didn't accept what we had in our pleadings. It's true. He read into what the, for example, the Department of Professional Regulation, a cease and desist order. It's sort of innocuous. Oh, they're just helping out the clerks a little bit by doing this. This was a cease and desist order by the Illinois Department of Professional Regulation. That's why the class ends at this point in time because they changed their conduct. This isn't some innocuous activity that's going on. These are hidden kickbacks that the poor consumer is paying unbeknownst to the consumer. And they're illegal. And they're illegal in 1996, and they were illegal in 2004 and 2005, and they stopped. They stopped because they weren't appropriate. Can I follow up with that, though? But Justice Neville is saying we don't want to, he's saying we're not going to go that far. We've got to look at what our rules say, and the rules say, in accordance with what Flynn said below, was your people are not adequate class representatives because of the, and he went a little farther than we're going right now, because of the problems with proof. So can you address what Justice Neville is saying? He said, look, how are your people, your plaintiffs, adequate class representatives? And before you do, let me just put a little gloss on that. The case that was cited, we granted the motion to cite additional legal authority, says, although we may not conduct an independent inquiry into the legal or factual merit of this case, as though we're reviewing a motion under 12B6 or 56, we may address arguments that implicate the merits of plaintiff's cause of action, insofar as those arguments also implicate the merits of the class certification decision. I think that's what he was, I mean, that's what Judge Flynn was doing or thought he was doing. I mean, I think in fairness to him, you know. Well, in that particular case, additional authority, they said the state class is fine. It was the federal class because there was no duty on the part of the banks under the federal law to disclose. So actually, I don't think that case helps them at all. It allowed the state class to go ahead. It seems to me to be more helpful to the plaintiffs. I don't want to steal Mr. Tillery's time here, but the bottom line is. They were being honest and candid in producing the case. I think it's in that case I had issues. I think it's, yeah, they're being honest and candid. I think it helps us, frankly, in terms of allowing the state certification to go ahead. But in respect to this, basically, if you don't allow the certification, these people are all left without a remedy. They say, oh, they could file individual cases. That's kind of ludicrous to think that for $200 to $900 that these people would all pursue cases. You know, you've got filing costs of a couple hundred dollars. You've got an attorney's fees if you're going to have an attorney. You've got deposition costs. You have experts issues. There's no way. And even if it were true, I'm sure Judge Evans would not appreciate tens of thousands of individual cases to be filed. So that is not impractical. That is impractical. And if this class certification is denied, all these people who were defrauded, clearly defrauded, are left without a remedy. So I think the judge did abuse his discretion. He ignored what we were saying in respect to the program, and he went to the individual cases, which I think was wrong. And I think a trial by file, if these cases were to be filed individually, would just be absurd in terms of the circuit court trying to absorb that. And I think by a class certification, we can look file by file outside the court, and the lawyers can do that and resolve that themselves outside of court. And this is an appropriate case to be certified. Let me ask you this. Don't the individual issues go to the issue of damages, whether or not they can prove their cases? And that's pretty clear what the damage is. I agree, Your Honor. It's pretty clear what the damage is. That's not what we're concerned with right now. That's correct. But we could easily prove objectively what the damages are. Just look at what the program was, what the percentage that was paid based on the premium. And it was laid out. We know what the damages are for each case. And it's a clearly certified period when both CT&T and Tycor was doing this program illegally, and it all was sandwiched between the HUD determining in 1996 this was illegal, and in 2005 when the Illinois Department of Professional Regulation said it's illegal and you've got to cease and desist this. Was it always between 70% and 80% depending upon the size of that? And then some had a program, depending on the amount of the house, that was the premium, and so then what category you fit in. So it was either one or the other depending on the program. But if I could, let Mr. Tillery finish thinking. Thank you. I don't know how much time I have left. Enjoy. I would just like to answer one question you raised about the standard of review, because I think it's important. When this case was argued, at the end of the case, Judge Flynn really said there was just one issue that he couldn't go along with, that one matter of law. And that really dealt with the issue of the RASPA interpretation in Part 3500, the CFR interpretation of the guidelines, which he simply disagreed with. He said that interpretation, which is that you cannot send a pro forma commitment to an attorney, because once you do, they can't, as a matter of law, perform core title agent services. And the defense has then said, okay, if they can't perform core title services after they've received a pro forma commitment, then they've done other services. Well, if you look at this class definition, it excludes that. And the reason it excludes it is because this definition only includes those transactions where the attorney received their full contract amount, not some partial payment. And in that same part of RASPA interpretation in Part 3500, there the HUD interpreted and said you cannot pay them the full contract amount. So if they're doing something like letting their office be used, for example, their copying machine be used for the closing, which is typical, the agent would go out and do the closing at the attorney's office where the clients are met. And they do that. You can't pay them 80 or 90 percent of the premium, the same contract amount. And HUD did that in 1996, said you can't. So the definition here excludes even those transactions. And it certainly, of course, excludes the numerous ones the defense has peppered their papers with, which is to say they got a survey or they did this, because these people who hired them, the buyers and sellers, were already paying them. If you look in the transactions here, Mr. Lorgosky got $500 from his client. Mr. Cohn got $350 from his client. That's what they're getting paid for, for doing those sort of non-core title service related functions. So the definition excludes all of it. And all of this discussion about the attorneys did this or they did that simply isn't there. Because, once again, you want us to say that this is a system analysis. It is. It has nothing to do with the players involved. It is. That's right. You actually just say, look, a lawyer getting a percentage fee based upon the value of a house is not how we run this profession. That's right. That's what you want us to say. That's right. It's the system. It's not an individual one, Your Honor. That's it. That is exactly it. There was, we put in our brief, at the end of the brief, there's a section on the fact that the judge entering his oral order made a determination of law. And that does relate to the standard of review. It's interesting here because this is a, if you look at it as an abuse of discretion standard, but the court found as a matter of law he made a determination which was inconsistent with our complaint. So if you take our complaint and the allegations in the complaint, he effectively made a substantive ruling on a question of law that our interpretation was incorrect. And I don't know effectively how that changes the analysis, but I think that certainly the court can look at that and see that that type of analysis can't be done at a class certification stage. It just simply cannot be done. Thank you very much. Thank you very much. May it please the Court. Morning. The Smith case by the Illinois Supreme Court said that in determining whether or not class certification is appropriate, you can look at what the facts are as well as the underlying applicable substantive law. In other words, and in the Cruz case, the second district, they said when you're looking at it, you don't just accept what the plaintiffs pled and say we're going to accept that no matter what. You have to look at the facts and the law, at least not to rule on the merits, but to gain an understanding of what we're talking about here to see whether or not the common issues or the individual issues predominate. That's what Judge Flynn did. And what Judge Flynn decided was that for him to rule or for him to certify the classes, he would have to hold that whenever the preliminary commitment or A exam is sent out, it doesn't matter as a matter of law whether there were services actually performed. And he said that would be contrary to RESPA where the statute says there is no kickback, where there are services that were, quote, under the RESPA statute actually performed. Services actually performed the issuance of a policy of title insurance. So let's talk about what the different statutes and regulations say. The statute, HC1B, talks about services actually performed. The HUD regulation, 24 CFR 3500.14G3, it says, it's a long one, but it's in the briefs, but it's the HUD regulation, says that an attorney may, quote, receive compensation as a title agent if the attorney performs core title agent services. And then you look at the illustration, illustration four, which is part of the HUD regulations. And what does that say? That goes through a scenario where, A, which is the attorney agent does certain things, and, B, the title insurance company does certain things. And it says, essentially, the attorney agent has to do something substantive. They've got to make a determination of insurability of title. And in that case, where you have that circumstance, if they're not doing it, if they're just getting it and doing nothing, then you have a violation. I want to stop you for a second. Yeah. The pro forma commitment, I have a couple questions. One is, can it be changed by the attorney? Can the attorney look at it and say, wait a minute, this is wrong, or you made a mistake here? Can he do that? First answer to that. The answer is yes, but I need to say one other thing that's important. Go ahead. And that is, what was sent by both CTI and TICOR, there's no evidence whatsoever that it qualifies as a, quote, pro forma commitment. Judge Flynn gave them starter files, and they object to that. Judge Flynn said starter files were preliminary materials. Okay. Earlier in the hearing, I think it's A16, I'll get a second, one second. But earlier in the hearing, Judge Flynn made it clear that when he was talking about, he's talking about it's A8, transcript page 26, line 15, preliminary title materials. So he said it twice, preliminary materials. And so this idea that he's just talking about starter files is wrong. He's talking about this material sent to the attorney agent. Let me get into my next question. I'm sorry. That's okay. Thank you for the explanation. So if the lawyer is looking at this material, and he's representing a client, he's representing the purchaser, and he's doing all this work, isn't that what he's supposed to be doing anyway for the purchaser? Shouldn't he be checking to make sure that everything is intact and properly done and the title is clear and everything else? Isn't that his job anyway? Why would he be entitled to then get another $833 or whatever it was in one of the cases for a $250,000 house? Why would he be entitled to that if he's doing his job for his client? And who is his client in this situation? He's getting paid by the insurance company, and his client, who does he represent? Typically, he's also the client for the seller or the attorney for the seller.  There is a form sent that is typically not always, and that's why individual determination, but typically he discloses, or he's supposed to disclose, that he is an attorney agent for the title company as well as representing the seller or buyer in this case. Is it an arrestment statement? Yes. It is called an affiliated business disclosure form. It's been produced on the records in this case. So that is something that's filled out. And on top of that, at the closing, the seller, I believe, where that person is being represented by the attorney, when they sign the escrow statement, it says on there what it is that the attorney agent is doing and how he's getting paid. So there is disclosure. The form is disclosed? There is disclosure, absolutely. That wasn't briefed here because it didn't come up until Mr. Power raised it, but there is disclosure. But back to your question, what is he doing? Here, and this is why there is no evidence whatsoever that these things, these preliminary commitments or A exam forms, the worksheets, qualify as pro forma commitments. The attorney agent is the one making the determination of the insurability of title. For it to be a pro forma commitment, you have to have the title company making the determination of insurability of title, making the evaluation, and then the attorney agent does nothing. Here, what the title company does is it collects the information. It sends computer-generated information after doing searches from the tax record and other records, and then the attorney agent goes through and the attorney agent says, I'm going to look at those and see if there's an issue. Are they supposed to do that for the seller? Not necessarily. The reason is for the seller, your job is to make sure that the sale transaction goes through. It's not to issue some sort of insurance policy, just being the attorney for the seller. Typically, if you're an attorney for the seller, you're not saying, I'm guaranteeing there's no problem with title, but that's what the attorney agent does when they're acting as the attorney agent in the transaction. They are issuing the insurance policy. Can I rewind the tape for a second? Sure. I want to go back to the question about do we need to go that far? It appears, and correct me if I'm wrong, the system is set up that no matter what the attorney does, the attorney knows he or she is going to get paid, and he or she is going to get paid a percentage of what the premium is, right? The attorney agent, if they do their, if the transaction goes through. They know going in that if everything goes well. They know before they even look at the file, I'm going to get paid. If the transaction goes through, they'll get paid. But they know that, right? Sure. And they know it's going to be a percentage. The bigger the house, the bigger the fee, right? Percentage is set forth, yes. Okay. So the bigger the house, we're happy lawyers. Smaller the house, we're not as happy. That has no bearing to what the attorney does, right? What matters is that the attorney is taking more risk. No, no, no. Wait a minute. Let me just answer the question. The fee, knowing I'm going to do a closing on a house in St. Clair County worth $800,000, let's say, and I know going in before I've even looked at the documents that I'm going to get paid, and I'm going to get paid based on how the value of that house, right? Your Honor, that would then be a question of whether the fee is reasonably related to the work that was performed, which has to be answered individually. Wait. Hold on. Just go with me. We haven't gotten to that point yet. The system is set up so that I know as an attorney going in, it doesn't make any difference how much work I'm going to put in. My fee is already tied to the value of that house, correct? You know, I have to go back to the fee schedule. I know there is a percent. It's 70% or 80% of the title insurance fee. I'm not sure the title insurance fee varies depending on the size of the house. I'd have to go back and look. There is a fee schedule that is not tied to what I do, correct? No, it is tied. It's not tied to exactly how many hours you put in. In other words, it's not hour based, but it is tied to you going in and making an evaluation of the insurability of title. The amount of the fee is not tied to what the lawyer does. The amount of the fee is tied to what the lawyer does. It's not tied to the number of hours. And if you want to compare it to the actual amount of work that was done, you have to look at it individually. Actual services performed is the language from RESPA. The amount of the fee is tied to the value of the house, isn't that correct? I don't think it is. I believe the title insurance amount is a flat amount. You're right, you're right. The amount of the fee is tied to the premium on the title insurance policy, correct? It is a certain percent of that. I know as the attorney going in, I look at the premium that's going to get paid, and I know what I'm going to make before I walk in the door, right? You know if the transaction goes through, you'll make a certain amount. There's nothing wrong with that. That's like instead of having an hourly fee in a case, you have a flat fee, and it will vary. In some cases, you may do more work. In some cases, you may do less work. But the question under RESPA is did you actually perform services? And that's something you have to look at individually. You said something a moment ago, and then you didn't finish it, about risk. Is the attorney agent taking on risk, you said? The attorney agent is issuing the policy. That's what you said. I wrote that down. He's issuing the policy. So is he doing that on behalf of the company, or how does it work? I think it's on behalf of the company. Okay. So if there's something wrong with the title, it turns out that there's an encroachment or something they didn't record, or there's an easement they weren't told about, or some diminution in the value of the property, who pays the insurance policy? I'm not sure offhand. Maybe the attorney doesn't do it. Or maybe he's indemnified. I'd have to check. I wonder. I'd have to check. I mean, what is he actually risking? If he's taking on a risk, maybe you have something. But if he's not, the company is. I mean, I don't know that seller's attorneys are sitting there thinking, well, if there's something wrong with this, I'm going to wind up paying for it. Right. I'd have to check on that. Okay. I do know that going back to RESPA and pro forma commitments, all the evidence here is that it is the attorney, attorney agent who is making the determination of insurability of title. That's from the CTI title package that's sent to the attorney agents at A78, to the affidavits from one attorney after another, attorney agent after another, describing in detail the work that they performed. So you have to look at it individually to see, did they do the work? Now, I need to talk about the HUD policy statement, the Florida statement, because we talked about the statute itself, which says work actually performed, and then the regulations, which talks about quartetal agent services. And what you have then is the HUD policy statement. And it's interesting. What the HUD policy statement says is if you have a pro forma commitment, then the attorney agent's not actually performing services. Now, obviously the other side relies on that. Two points on that. Number one is that what it's suggesting is that if that's all you have, all you have is the pro forma commitment, then you don't have the attorney agent performing services. It does not say, never does it say, and therefore you don't need to look at all of what the attorney agent did. You don't need to look at whether they went out, as the record shows here, and got information outside of what the company sent, went to the tax records, talked to the agent, made changes, which is relevant under the CTI class, all the things that they did. The HUD policy statement in Florida never says that becomes irrelevant. Let me make sure I understand. You're saying that all they're saying, all HUD's saying, if the pro forma statement is there, you can't rely on that alone in saying that's what the attorney did or did not do. You've got to look at what the attorney did. And HUD, the HUD policy statement in Florida never says, therefore whatever the attorney can do lots and lots of work and it all becomes irrelevant, never says that. Because if it did say that, it would be inconsistent with the statute, which talks about services actually performed. And that's something you can't look at it on a system-wide basis. You've got to look at it individually. Because the statute doesn't say it's illegal to set up a system that allows for the possibility for this happening. It says it's illegal to have a system, to have a kickback, where you have no services actually performed. And that's where we turn to the Illinois pronouncement, the Illinois Bulletin in 2005, because there the language is very, very important. What the language says is that you can't send preliminary title commitments because they provide information in such, quote, in such a manner as to allow the title insurance agent to issue the commitment without having to examine title and determine insurability of title, end of quote. In other words, they allow for the potential for abuse. We, the Illinois Insurance Agency, don't think it's a good idea to allow these things to happen or to have these things get sent out because they allow for the possibility of an attorney agent not doing the work they're supposed to do. That's different than a court of law coming in and saying, is there a violation of RESPA here? Were services actually performed? Because while an agency can say, we don't think it's a good idea to do this, we think you should stop sending preliminary commitments, and that's okay for an agency to do, for a court of law to determine whether or not there was a kickback or whether or not services actually were performed. That's something that has to be done on an individual basis. That's what Judge Flynn found. Judge Flynn rejected what he called the, quote, draconian interpretation of RESPA, that all you have to do is look at what was sent and you can ignore everything that was done by the attorney agents. And it's particularly egregious in the case of the CTI class, the Calella class, because in the Calella class, you can have something that's sent from the title company, from Chicago Title, to the attorney agent, and the attorney agent takes it and then makes all kinds of changes, does a lot of work, makes all kinds of changes, and it comes back, and what ends up being issued may be very, very different from the preliminary commitment that's sent, but under plaintiff's interpretation, a piece of paper was sent from Chicago Title, so it's irrelevant what the attorney agent did, even though there were tons of changes. Judge Flynn said, no, that can't be. Now, plaintiffs on page 10 of the reply brief says, well, those changes are irrelevant. Judge Flynn said, no, they are relevant, and the only way plaintiff's argument depends upon a finding as a matter of law that whatever the attorney agents did is irrelevant after a pro forma commitment is sent. So even if these things qualify as pro forma commitments, which they don't, and all the evidence is they don't, and the plaintiffs, when they cite to evidence, look carefully, because all they cite to is their reply briefs below. They don't cite to actual evidence. They just cite to their own briefs. But all the evidence is these are pro forma commitments. But even if there's a common issue about whether or not these things are pro forma commitments, for the court to say, therefore, it's a common issue that predominates, you have to say that all the evidence about what the individual agents, the services they actually performed, is irrelevant as a matter of law under RESPA. Contrary to the statute, Judge Flynn said, no, I'm not going to do that. Judge Flynn said that would be an inappropriate determination. Judge Guzman in the Howland case made that same determination. And when you're talking about abuse of discretion, it's would any reasonable person find that. And now we have not only Judge Flynn, but the Northern District Court in Howland saying the same thing. No court has ever said it's a violation of RESPA just to send something without looking at all of what the attorney agents did. Who do these attorney agents represent? To whom does their duty run? Well, I think they have duties both to whoever their client is, the seller, as well as some sort of duty as an agent to the title company. But because that is disclosed in this form, this Affiliated Business Arrangement form, or Affiliated Business Disclosure form, I believe. They're not representing the buyer. Typically it's the seller. It could be the buyer. I mean, you could have it where you could have it typically. Who do they represent? I mean, who could sue them? Typically it's the seller. Typically it's the seller who is paying for the insurance. But you could have it where the buyer's attorney says, well, I want to buy the title insurance. But I believe typically it's the seller. I don't think it matters for purposes of which side it is. It does matter, doesn't it? I mean, who's paying them? Who's their duty run to? Well, they have a duty. And whether there's a conflict. Well, there's a conflict. Which is exactly why you have the form. Why you have the disclosure form. Right. You know, it's like any other, you know, if you're representing a husband and a wife in something, then if you have them waive. You're very dumb if you're doing that. You're very dumb. You should be practicing law. I've heard of it happening. Let's put it that way. And as long as you have a waiver of the conflict, it's okay. So who do they represent? You're representing the title insurance company. When these people are attorney agents, then you're paying them, right? Who are they representing? As an attorney, they're representing typically the seller. But it could be the buyer, depending on the situation. And they're also an agent for the title company owing a duty of agency. And as long as they are telling, you know, there is disclosure under this form, which they're supposed to do. The disclosure says what? It says I'm acting as an agent for the title company as well, and I'm going to get paid by them. Does it say how much? Does it disclose the amount? I think that it depends on the time period. I think that now it does. Earlier, it just said I'm an agent for them, and I'm going to get paid. It doesn't say the amount. However, you also – but the other thing you have is that that's the earlier disclosure. At the time of closing, you have the more detailed disclosure that does list a line item. Although I think that has varied as well, depending on whether you're talking about TICOR or CTI or CTI Northwest or Southwest. They've had different practices on that. Ultimately, on the closing statement, it says this is how much the seller's attorney got for these additional services. Yes. Now it does. In the past, it has varied depending on which company and which branch of the company. All right. If the Court has nothing further, that's all I have. Thank you very much. Thank you. I'm just going to lead on. How is a percentage fee wrong in this situation? Plaintiffs' lawyers get percentage fees. And it doesn't really matter necessarily, right? If you have to try the case or you settle the case, you're going to get that third. Well, there's several things wrong with this, of course. And if the purpose of the percentage fee were to send a client to somebody for business purposes and get a fee back as a percentage of the house they were paying in violation of federal law, it certainly wouldn't be appropriate. But he's saying that's why I asked the question about who they represent. It seems to be a confusing point, but it seems to be a dispositive point, too. Who are they representing? You asked the question that went to the heart of it, Your Honor. And that is because there's a – we didn't raise this. Our challenge is not to the lawyers. Our challenge is to the system. But there's a rag directly on point.